**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| I PEE HOLDING, LLC, ) | |
| ) | Civil Action No. 1:18-cv-01564-AJT-TCB |
| Plaintiff, ) | |
| v. ) | **ANSWER AND FIRST AMENDED** |
| ) | **COUNTERCLAIMS OF DEFENDANT** |
| VIRGINIA TOY AND NOVELTY ) | **VIRGINIA TOY AND NOVELTY** |
| COMPANY, ) | **COMPANY** |
| ) | |
| Defendant. ) | |
| ) | |

Defendant, Virginia Toy and Novelty Company ("VTC") by and through its attorneys,

answer the Complaint of Plaintiff I Pee Holding, LLC ("IPH") as follows:

## PARTIES

1.      VTC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 1 of the Complaint and otherwise denies the allegations in paragraph

1 of the Complaint.

2.      VTC admits the allegations in paragraph 2 of the Complaint.

## JURISDICTION AND VENUE

3.      VTC denies the allegations of paragraph 3 of the Complaint, except that it admits

that the Complaint asserts the Court has subject matter jurisdiction over the action pursuant to 28

U.S.C. § 1331 and § 1338.  VTC denies that there is any basis for this action and that IPH is

entitled to any relief, as it requests or otherwise.

4.      VTC denies the allegations of paragraph 4 of the Complaint, except that it admits

that the Complaint asserts the Court has personal jurisdiction over the action.  VTC denies that

there is any basis for this action and that IPH is entitled to any relief, as it requests or otherwise.

5.      VTC denies the allegations of paragraph 5 of the Complaint, except that it admits that the Complaint asserts the venue is proper pursuant to 28 U.S.C. § 1400.  VTC denies that there is any basis for this action and that IPH is entitled to any relief, as it requests or otherwise.'

## BACKGROUND

6.      VTC denies the allegations of paragraph 6 of the Complaint, except that it admits that the Complaint purports to recite an action pursuant to the Patent Laws of the United States, 35 U.S.C. § 271.  VTC denies that there is any basis for this action and that IPH is entitled to any relief, as it requests or otherwise.

### History of the Parties and Relevant Patent

7.      VTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and otherwise denies the allegations in paragraph 7 of the Complaint.

8.      VTC denies the allegations of paragraph 8 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

9.      VTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint and otherwise denies the allegations in paragraph 9 of the Complaint.

10.      VTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and otherwise denies the allegations in paragraph 10 of the Complaint.

11.      VTC admits that it was incorporated in Virginia 2002 and at least six people work for it, but otherwise denies all other allegations in paragraph 11 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

**Virginia Toy is Infringing the '461 Patent**

12.     VTC denies the allegations in the heading "Virginia Toy is Infringing the '461 Patent" and denies the allegations in paragraph 12 of the Complaint, except that it admits it sells products with the following numbers: 21CB2MR, 21SFB1WR, 21BU2BG, 21SKB2W, 21PU2O, and 21BU2BO. To the extent the allegations state a legal conclusion no response is required.

13.     VTC admits that it sells products via its own website and through Amazon.com but otherwise denies all other allegations in paragraph 13 of the Complaint.

14.     VTC admits that IPH has not licensed VTC to manufacture or sell the accused products but otherwise denies the allegations of paragraph 14 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

**Plaintiff Seeks to Enforce the '461 Patent against Virginia Toy**

15.     VTC denies the allegations in paragraph 15 of the Complaint and refers to Exhibit B for its full terms.

16.     VTC denies the allegations in paragraph 16 of the Complaint and refers to Exhibit B for its full terms.

**CAUSE OF ACTION**

17.     In Answer to the allegations of paragraph 17 of the Complaint, VTC repeats and incorporates the answers provided in paragraphs 1 through 16 above as if fully stated herein.

18.     VTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and otherwise denies the allegations in paragraph 18 of the Complaint.  VTC refers to Exhibit A for its full terms.

19.     VTC denies the allegations in paragraph 19 of the Complaint.

20.     VTC denies the allegations in paragraph 20 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

21.     VTC denies the allegations in paragraph 21 of the Complaint. To the extent the allegations state a legal conclusion no response is required.

22.     VTC denies the allegations in paragraph 22 of the Complaint and refers to Exhibit A for its full terms.

23.     VTC denies the allegations in Paragraph 28 of the Complaint.   To the extent the allegations state a legal conclusion no response is required.

24.     VTC denies the allegations in paragraph 24 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

25.     VTC denies the allegations in paragraph 25 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

26.     VTC denies the allegations in paragraph 26 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

27.     VTC denies the allegations in paragraph 27 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

28.     VTC denies the allegations in paragraph 28 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

29.     VTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and otherwise denies the allegations in paragraph 29 of the Complaint.

30.     VTC denies the allegations in paragraph 30 of the Complaint.  To the extent the allegations state a legal conclusion no response is required.

31. VTC denies the allegations in paragraph 31 of the Complaint. To the extent the allegations state a legal conclusion no response is required.

32. VTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and otherwise denies the allegations in paragraph 32 of the Complaint. To the extent the allegations state a legal conclusion no response is required.

33. VTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint and otherwise denies the allegations in paragraph 33 of the Complaint. To the extent the allegations state a legal conclusion no response is required.

34. VTC denies the allegations of paragraph 34 of the Complaint and all of subparts following IPH's "Prayer for Relief" A, B, C, D, E, F, G, and H, including that it has committed or has indirectly caused others to commit any act of infringement. VTC denies that there is any basis for this action and that IPH is entitled to any relief, as it requests or otherwise.

## AFFIRMATIVE AND OTHER DEFENSES

VTC asserts the following affirmative and other defenses without assuming the burden of proof where such burden is not legally upon VTC, and reserve the right to assert any other defense consistent with the facts discovered in the case:

### FIRST DEFENSE
### (Non-Infringement)

1. VTC has not infringed any valid and enforceable claim of the '461 patent either literally or under the doctrine of equivalents.

**SECOND DEFENSE**

**(Invalidity)**

2.      All allegedly infringed claims of the '461 patent are invalid because they fail to satisfy all of the requirements and conditions for patentability specified in 35 U.S.C. §§102, 103, and 112.

**THIRD DEFENSE**

**(Prosecution History Estoppel)**

3.      IPH is estopped by the doctrine of prosecution history estoppel from asserting that VTC has infringed any claims of the '461 patent under the doctrine of equivalents.

**FOURTH DEFENSE**

**(Marking and Damages Limitations)**

4.      To the extent that any products made, offered for sale, or sold by IPH or a IPH licensee in the United States are covered by a claim of the '461 patent and have not been properly marked as specified by 35 U.S.C. § 287, VTC is not liable for damages for alleged infringement of such patent prior to receiving actual notice of alleged infringement.

**FIFTH DEFENSE**

**(Waiver, Equitable Estoppel, Acquiescence)**

6.      Upon information and belief, IPH's claims for infringement of the '461 patent or damages/relief as result thereof are barred by waiver, equitable estoppel, acquiescence.

**SIXTH DEFENSE**

**(Failure to State a Claim On Which Relief Can Be Granted)**

7.      IPH's Complaint fails to state a claim for relief with respect to the '461 patent.

8.      Having failed to state a claim, IPH's claims for relief for any alleged infringement of one or more claims of the '461 patent cannot be granted.

## SEVENTH DEFENSE
### (Failure to State With Particularity an Inducement of Infringement Theory)

9.      IPH's Complaint fails to particularly plead and/or set forth specific facts and/or

allegations pursuant to Federal Rule of Civil Procedure 9 demonstrating VTC's alleged

inducement of direct infringement of the '461 patent.

10.      Having failed to particularly plead a cause of action, IPH's claims for relief for

any alleged inducement of direct infringement by customers of one or more claims of the '461

patent cannot be granted.

## FIRST AMENDED COUNTERCLAIMS

Virginia Toy and Novelty Company ("VTC"), by and through its attorneys, assert the

following amended counterclaims against I Pee Holding, LLC ("IPH") and aver as follows:

## THE PARTIES

1.      VTC is a corporation organized and existing under the laws of the state of

Virginia, and has a principal place of business at 5823 Ward Court, Virginia Beach, VA 23455.

2.      On information and belief, IPH is an Illinois corporation having its principal

place of business in Vernon Hills, Illinois.

## JURISDICTION AND VENUE

3.      These counterclaims arise under the patent laws of the United States, 35 U.S.C. §

1, et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.  This Court has subject

matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.

4.      VTC seeks a declaratory judgment that the products sold under the following

product numbers, 21CB2MR, 21SFB1WR, 21BU2BG, 21SKB2W, 21PU2O, and 21BU2BO

(the "accused products"), do not infringe any valid and enforceable claim of U.S. Patent No.

10,064,461, titled "Light String with Lighting Elements Surrounded by Decorative Shroud and

Retained by Snap-fit Enclosure System" ("the '461 patent"), either literally or under the doctrine of equivalents.

5.     VTC seeks a further declaratory judgment that it is free to make, use, import, sell, and offer for sale the products sold under the following product numbers, 21CB2MR, 21SFB1WR, 21BU2BG, 21SKB2W, 21PU2O, and 21BU2BO, in the United States.

6.     In its Complaint, IPH alleges ownership by assignment of the '461 patent and that sales or offers to sell the accused products infringe the '461 patent.  In its Answer and Counterclaims, VTC has denied that the accused products infringe any valid claim of the Asserted Patents.  Thus, a case or actual controversy exists within the meaning of 28 U.S.C. §§ 2201 and 2202.

7.     This Court has personal jurisdiction over IPH because, *inter alia*, IPH has voluntarily appeared and consented to personal jurisdiction by commencing the underlying patent infringement action in this Court.

8.     Venue is proper in this Court because these are compulsory counterclaims under Fed. R. Civ. P. 13(a), and also because 28 U.S.C. §§ 1391 and 1400 apply.

## COUNT I:  NON-INFRINGEMENT OF THE '461 PATENT

9.     VTC repeats and incorporates herein the allegations in paragraphs 1 through 8 above as though fully stated herein.

10.     Contrary to what is depicted and described in paragraphs 23 and 24 in IPH's Complaint, the cover, conductor, and light element of VTC's 21PU2O product do not infringe the '461 Patent because *inter alia* the conductor and light element are integrated with and connected and fastened to the cover as shown below:





**FIGURE 1**                              **FIGURE 2**

As shown in Figure 1 and Figure 2, plastic fasteners (identified by white arrows in Figure 2) protruding from the inside of the plastic cover brace the light element and retain it within the cover without the need for the cap.

11.    Product numbers 21CB2MR, 21SFB1WR, 21BU2BG, 21SKB2W, 21PU2O, and 21BU2BO do not and cannot infringe Claims 3-4 of the '461 patent.

12.     Product numbers 21SFB1WR and 21SKB2W do not and cannot infringe Claim 8 of the '461 patent.

13.    VTC does not and never has specifically intended others to directly infringe any claim of the '461 patent, either literally or under the doctrine of equivalents.

14.    VTC has not infringed, or actively induced or contributed to infringement by anyone else, of any claim of the '461 patent, either literally or under the doctrine of equivalents.

## COUNT II:  INVALIDITY OF THE '461 PATENT

15.     VTC repeats and incorporates herein the allegations in paragraphs 1 through 14 above as though fully stated herein.

16.     Each allegedly infringed claim of the '461 patent is invalid for failing to satisfy one or more of the requirements and conditions of patentability set forth in 35 U.S.C. §§ 102, 103, and/or 112.

### Invalidity for violation of 35 U.S.C. § 112, Second Paragraph

17.     By way of one non-limiting example, claims 1-8 of the '461 patent recite, *inter alia*, "wherein the conductor and light element are non-integral with and separate, apart and removable from the shroud and the cap…."

18.     Each of the '461 patent specification and prosecution history fails to define or delineate between any of the terms "non-integral with," "separate," "apart," or "removable."

19.     There is a presumption that different words in a claim have different meanings.

20.     However, the person of ordinary skill in the art would be unable to give different meanings to "non-integral with," "separate," "apart," and "removable" because each of those terms has at least one plain and ordinary meaning to the person of ordinary skill in the art that makes one term an alternative to at least one of the other terms.

21.     As a result of using different claim terms that serve as alternatives to one another, such a person of ordinary skill in the art would be unable to define the full scope of claims 1-8 of the '461 patent with reasonable certainty.

### Invalidity under 35 U.S.C. §§ 102 and 103

22.     U.S. Patent No. 8,083,381 [the "'381 Patent"], which was patented on December 27, 2011, qualifies as prior art under 35 U.S.C. § 102(a)(1) to the '461 Patent. *See* Exhibit A.

23.     U.S. Patent No. 7,036,962 [the "'962 Patent"], which was patented on May 2, 2006, qualifies as prior art under 35 U.S.C. § 102(a)(1) to the '461 Patent. *See* Exhibit B.

24.     U.S. Patent Application Publication No. 2009/0161372 [the "'372 Publication"], which was published on June 25, 2009, qualifies as prior art under 35 U.S.C. § 102(a)(1) to the '461 Patent. *See* Exhibit C.

25.     U.S. Patent Application Publication No. 2005/0117339 [the "'339 Publication"], which was published on June 2, 2005, qualifies as prior art under 35 U.S.C. § 102(a)(1) to the '461 Patent. *See* Exhibit D.

26.     U.S. Patent No. 7,178,930 [the "'930 Patent"], which was patented on February 20, 2007, qualifies as prior art under 35 U.S.C. § 102(a)(1) to the '461 Patent. *See* Exhibit E.

27.     International Patent Application Publication No. WO98/43014 [the "'014 Publication"], which was published on October 1, 1998, qualifies as prior art under 35 U.S.C. § 102(a)(1) to the '461 Patent. *See* Exhibit F.

### A.     Claims 1-4 and 6 Are Invalid

28.     The '381 Patent discloses the following:



'381 Patent, Figures 3, 4, and 6 (annotations supplied). *See also* '381 Patent, Col. 1, lines 63-64;

Col. 2, lines 9-42; Col. 2, line 66 – Col. 3, line 22; Col. 3, lines 25-29; Figures 2 and 5.

29.    As shown above in Paragraph 28, the '381 Patent discloses "[a] light string with a

snap-fit enclosure, comprising: a conductor; a light element mounted to the conductor; a shroud

12

having a body having an open interior and a neck, the neck having an opening therein, open to

the body interior; a cap …; and cooperating locking elements positioned in the cap and on the

neck to lock the cap to the neck."  *See also* '381 Patent, Col. 3, line 56 – Col. 4, line 58 (Claims

1-2 and 16-17).  To the extent the '381 Patent does not disclose the aforementioned language or

show the same to be inherent, it would have been obvious based on the knowledge of a person of

ordinary skill in the art as of the time of the alleged '381 Patent technology. *See, e.g.*, '381

Patent, Col. 3, lines 42-54.

30.     As shown above in Paragraph 28 and Figures 2-5 of the '381 Patent, "the cap is

secured to the neck and the light element secured within the shroud without the need for an

external fastener." *See also* '381 Patent, Col. 3, line 56 – Col. 4, line 58, Claims 1-2 and 16-17.

To the extent the '381 Patent does not disclose the aforementioned language or show the same to

be inherent, it would have been obvious based on the knowledge of a person of ordinary skill in

the art as of the time of the alleged '381 Patent technology. *See, e.g.*, '381 Patent, Col. 3, lines

42-54.

31.     As shown above in Paragraph 28 and annotated Figure 5 of the '381 Patent

below, "the cap and the neck have at least two cut-outs formed therein, respective ones of the

cap cut-outs and the neck cut-outs cooperating and aligning with one another to define a

substantially straight-through path … configured to receive the conductor with the cap secured

to the neck."



FIG.5

*See* '381 Patent, Col. 1, lines 60-62; *see also* '381 Patent, Col. 3, line 56 – Col. 4, line 58,

Claims 1-2 and 16-17.  To the extent the '381 Patent does not disclose the aforementioned

language or show the same to be inherent, it would have been obvious based on the knowledge

of a person of ordinary skill in the art as of the time of the alleged '381 Patent technology. *See,*

*e.g.*, '381 Patent, Col. 3, lines 42-54.

32.     As shown above in Paragraph 28 and Figures 2-5 of the '381 Patent, "the

conductor and light element are non-integral with and separate, apart and removable from the

shroud and the cap," and "the shroud is substantially enclosed."  To the extent the '381 Patent

does not disclose the aforementioned language or show the same to be inherent, it would have

been obvious based on the knowledge of a person of ordinary skill in the art as of the time of the

alleged '381 Patent technology. *See, e.g.*, '381 Patent, Col. 3, lines 42-54.

33.     IPH admitted in its April 12, 2019 Answer and Affirmative Defenses that the

'381 Patent includes "[a] light string with a snap-fit enclosure, comprising: a conductor; a light

element mounted to the conductor; a shroud having a body having an open interior and a neck,

the neck having an opening therein, open to the body interior; a cap…; and cooperating locking

elements positioned in the cap and on the neck to lock the cap to the neck," "the cap is secured

to the neck and the light element secured within the shroud without the need for an external

fastener," "the cap and the neck have at least two cut-outs formed therein, respective ones of the cap cut-outs and the neck cut-outs cooperating and aligning with one another to define a substantially straight-through path…configured to receive the conductor with the cap secured to the neck," "the conductor and light element are non-integral with and separate, apart, and removable from the shroud and the cap," and "the shroud is substantially enclosed." *See* ECF No. 24, pp. 4-5, ¶¶ 22-25.

34.    Claim 1 of the '381 Patent recites: "[a] light string with a snap-fit enclosure, comprising: a conductor; a light element mounted to the conductor; a shroud having a body having an open interior and a neck, the neck having an opening therein, open to the body interior; a cap…; and cooperating locking elements positioned in the cap and on the neck to lock the cap to the neck," "the cap is secured to the neck and the light element secured within the shroud without the need for an external fastener," "the cap and the neck have at least two cut-outs formed therein, respective ones of the cap cut-outs and the neck cut-outs cooperating and aligning with one another to define a substantially straight-through path…configured to receive the conductor with the cap secured to the neck," "the conductor and light element are non-integral with and separate, apart, and removable from the shroud and the cap," and "the shroud is substantially enclosed.

35.    The '381 Patent includes every limitation of claim 1 of the '461 Patent.

36.    Claim 2 of the '461 patent requires the limitations of Claim 1 of the patent in addition to requiring "the light element is an LED."

37.    The '381 Patent discloses that its "lamp (20) is connected to the seat (10) and has a printed circuit board (PCB) (21), an LED (22), multiple capacitors (24), multiple resistors (25), a control IC (integrated circuit) (26) and two groups of wires (23)." *See* '381 Patent, Col. 2, lines

31-34, *see also* Col. 3, line 56 – Col. 4, line 64 (Claims 1-20 reciting "A holiday light with LED…").

38.     The '381 Patent discloses a light element that is an LED.

39.     As shown above in Paragraphs 28-38, the '381 Patent includes every limitation of Claim 2 of the '461 Patent.

40.     Claim 3 of the '461 patent requires the limitations of Claim 1 of the patent in addition to also requiring "the cooperating locking elements include a ramped surface and a lip on one of both of the cap and the neck."

41.     The '381 Patent discloses and illustrates "cooperating locking elements" that "include a ramped surface and a lip on one of both of the cap and the neck," as shown below:



'381 Patent, Col. 3, lines 6-22; Col. 4, lines 7-16 and 55-56 (Claims 2 and 17).

42.     The '381 Patent illustrates the following surfaces as shown as exploded views of an annotated version of its Figure 4:

16



| Cap Locking Element Ramped Surface (blue) | Cap Locking Element Lip (red) | Neck Locking Element Ramped Surface (green) | Neck Locking Element Lip (orange) |
|---|---|---|---|

43.     As shown above in Paragraphs 28-42, the '381 Patent includes every limitation of Claim 3 of the '461 Patent.

44.     Claim 4 of the '461 patent requires the limitations of Claim 1 of the patent in addition to also requiring, "the neck includes four cuts-outs to define four sections, and wherein at least two of the sections include a ramped surface and a lip and wherein the cap includes corresponding ramped surfaces and lips to cooperate with and engage the ramped surfaces and lips of the neck."

45.     The '381 Patent discloses and illustrates a "neck" that "includes four cuts-outs to define four sections, and wherein at least two of the sections include a ramped surface and a lip and wherein the cap includes corresponding ramped surfaces and lips to cooperate with and engage the ramped surfaces and lips of the neck," as shown below:



FIG.2

46.   As shown above in Paragraphs 28-45, the '381 Patent includes every limitation of Claim 4 of the '461 Patent.

47.   Claim 6 of the '461 patent requires the limitations of Claim 1 of the patent in addition to also requiring, "at least three light elements mounted to the conductor spaced from one another, each light element enclosed within a shroud and secured therein by a cap."

48.   The '381 Patent discloses and illustrates "at least three light elements mounted to the conductor spaced from one another, each light element enclosed within a shroud and secured therein by a cap," as shown below:



FIG.7

49.    As shown above in Paragraphs 28-48, the '381 Patent includes every limitation of Claim 6 of the '461 Patent.

**B.    Claims 5 and 7 Are Invalid**

50.    Claim 5 of the '461 patent requires the limitations of Claim 1 of the patent in addition to also requiring "a controller, the controller including one or more batteries and a switch."

51.    The '381 Patent discloses a controller to control the lights of the light string. *See* '381 Patent, Col. 1, lines 40-42; Col. 2, lines 31-34, Col. 3, lines 30-41 (IC controller 60 to control LEDs (22) to "light according to a program for aesthetic effects, for instance, light synchronously with a same color, light gradually with different colors" and otherwise "provide[] various lighting effects"); Figure 7, item 60.



FIG.7

52.     As of the earliest effective filing date of the '461 Patent, a person of ordinary skill in the art would have found including one or more batteries, as opposed to a transformer, to power an IC controller to be obvious.

53.     The Supreme Court has stated a claim is obvious when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field to yield a predictable result. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416 (2007).

54.     Batteries for light string controller switches were already known in the prior art.

55.     An example of a prior art light string controller switch that uses a battery is found in the '339 Publication.

56.     An example of a prior art light string controller switch that uses a battery is found in the '014 Patent.

57.     An example of a prior art light string controller switch that uses a battery is found in the '962 Patent.

58.     An example of a prior art light string controller switch that uses a battery is found in the '930 Patent.

59.     The '339 Publication discloses an illuminating light string arrangement 1 with a control unit 30 that can be powered in two ways: (i) a power device 40, which is a connector to an external power source (e.g., plug-in); or (ii) power device 40′, which is embodied as a battery case having a predetermined number of DC batteries. *See* '339 Publication, ¶¶ [0046]; [0051]; Figs. 3A, 4.

60.     The '339 Publication discloses that the control unit 30 of light string arrangement 1 "allows [a user] to control the light effect of the light string by inputting command to the command circuit 31." '339 Publication at ¶ [0045].

61.     The '339 Publication teaches that a light string controller switch can be powered by external power or batteries.

62.     The '339 Publication teaches that external power sources for light strings can be substituted for battery cases.

63.     The prior art teaches that external power sources for light strings can be substituted for battery cases.

64.     Substituting the '339 Publication's power device 40′ for the transformer 70 powering the IC controller 60 of the light string of the '381 Patent would have been a substitution already known to those skilled in the art.

65.     The '014 Patent discloses a string of LED light emitting devices 11/112 electrically connected to a DC battery 17/113 connected to an inverter/controller 21/111 and timer 29 used to provide differing optical effects. *See* '014 Patent, p. 3, lines 1-3, p. 7, line 8-9, p. 7, line 20 – p. 9, line 21, p. 12, line 1 – p. 13, line 7; Figs. 1, 5.

66.     Substituting the battery 17/133 of the light string disclosed in the '014 Patent for the transformer 70 powering the IC controller 60 of the light string of the '381 Patent would have been a substitution already known to those skilled in the art.

67.     The '339 Publication discloses that there are two choices for powering a light string: external power and a battery power.

68.     Battery powered light strings are a predictable variation of powering a light string known to those skilled in the art.

69.     There are a finite number of options for powering light strings.

70.     The '461 Patent admits that light strings can be used as necklaces when their bulbs are LEDs.  *See* '461 Patent, Col. 1, lines 11-19 ("Light strings or string lights are typically outdoor ornamental devices that include a plurality of lights that are powered and hung from shielded or insulated wires. These devices can also be used, as, for example, a necklace, when the ends of the string are secured to one another. And, in that light emitting diode (LED) technology has become so common, such light strings can be used with greater degrees of safety, since LED are typically low power (low voltage) and do not generate much heat in use.")

71.     What the '461 Patent states at Column 1, lines 11-19 is admitted prior art.

72.     Light strings that rely on battery power are in the prior art.

73.     Making light strings that rely on battery power is within the ordinary skill in the art.

74.     The '962 Patent discloses a light string necklace in existence prior to the '381 Patent that used a DC battery hub as part of a necklace arrangement: "[t]he light-up accessory 1 of the present invention can further comprises a Direct Circuit (DC) battery hub 30 have two electrical terminals which are adapted to connect with the two electrical terminals of the two-wire cable (connecting chain 21)." Col. 5, lines 19-23; Fig. 5.

75.     The '962 patent also disclose "The power supply 30', according to the preferred embodiment, is a Direct Circuit (DC) battery hub having two electrical terminals which are adapted to connect with the two electrical terminals of the two-wire cable. The power supply 30' comprises a power hub 31' having a battery cavity 311' for receiving a replaceable battery as a power source therein to supply a DC power, wherein the lighting switch 1312 is provided on the power hub 31' and is operatively connected to the connecting chain 22' to selectively control the

elementary building units 10' in an on and off manner, as shown in FIG. 6." '962 Patent, Col. 8, lines 25-35.

76.     The '930 Patent discloses an "illuminated necklace" prior to the '381 Patent that "utilizes three (3) batteries 80, 80, and 80 in series, each of which is 1.5 volts, so as to deliver 4.5 volts, when the batteries 80, 80, and 80 are at full charge. Due to the relatively low current draw, the batteries can last 5 to 6 hours during continuous use—that is, while the on-off switch 90 remains on and the blinking necklace blinks on and off. Such a capability can be provided by a flasher or oscillator integrated circuit device. A simple integrated circuit can be used in an electrical Switching circuit 94 to get the light emitting devices 24 to flash on and off at a constant rate. To get a light emitting device 24 to flash on and off at a relatively constant rate. Such a flasher integrated circuit uses an electronic timer to control the flash rate of the light emitting device 24." Col. 5, lines 1-5, lines 43-57; Figs. 4 & 10 (item 70- battery housing).

77.     The '962 Patent demonstrates the prior art use of batteries for light string controllers with switches.

78.     The '930 patent demonstrates the prior art use of batteries for light string controllers with switches.

79.     The '962 Patent demonstrates that others in the prior art did accomplish making light strings that used batteries with light string controllers and switches.

80.     The '930 patent demonstrates that others in the prior art did accomplish making light strings that used batteries with light string controllers and switches.

81.     As shown above in Paragraphs 28-80, the '381 Patent includes every limitation of Claim 5 of the '461 Patent and to the extent a limitation is absent, that limitation would be a

substitute for what the '381 Patent discloses and available to the person of ordinary skill in the art to substitute for what is disclosed in the '381 Patent to yield predictable results.

82.     Claim 7 of the '461 patent requires the limitations of Claim 6 of that patent, while also requiring, "a controller, the controller including one or more batteries and a switch, the controller including circuitry to control a lighting scheme of the light elements."

83.     As shown above in Paragraphs 28-82, the '381 Patent includes every limitation of Claim 7 of the '461 Patent and to the extent a limitation is absent, that limitation would be a substitute for what the '381 Patent discloses and available to the person of ordinary skill in the art to substitute for what is disclosed in the '381 Patent to yield predictable results.

### C.     Claim 8 Is Invalid

84.     As shown above in Paragraph 28, the '381 Patent discloses "[a] light string with a snap-fit enclosure, comprising: a conductor; a plurality of LED light elements mounted to the conductor; a plurality of shrouds, each shroud being substantially enclosed and having a body having an open interior and a neck, the neck having an opening therein, open to the body interior…; a plurality of caps, each cap configured to fit onto the neck  of a respective one of the plurality of shrouds…; and cooperating locking elements positioned in the cap and on the neck to lock the cap to the neck…."  *See also* '381 Patent, Col. 3, line 56 – Col. 4, line 58 (Claims 1-2 and 16-17).

85.     As shown above in Paragraph 28 and Figures 2-5 of the '381 Patent, the '381 Patent discloses, "the cap is secured to the neck and the LED light element secured within the shroud without the need for an external fastener" *See also* '381 Patent, Col. 3, line 56 – Col. 4, line 58, Claims 1-2 and 16-17.

86.     As shown above in Paragraph 28 and annotated Figure 5 of the '381 Patent below, the '381 Patent discloses, "each cap having at least two cut-outs therein cooperating with the cut-outs in the neck such that when the cap is positioned on the neck, the cut-outs in the neck and the cut-outs in the cap define a substantially straight-through path for passage of the conductor... ."



See '381 Patent, Col. 1, lines 60-62; see also '381 Patent, Col. 3, line 56 – Col. 4, line 58, Claims 1-2 and 16-17.

87.     As shown above in Paragraph 28 and Figures 2-5 of the '381 Patent, the '381 Patent discloses, "the conductor and the plurality of LED light elements are non-integral with and separate, apart and removable from respective ones of their shrouds and caps."

88.     As shown above in Paragraph 28 and annotated Figure 2 of the '381 Patent, the '381 Patent discloses, "the neck having four cut-outs formed therein equally circumferentially spaced from one another to define four sections, two opposing cut-outs configured to receive the conductor, such that the conductor is recessed from an end of the neck" and "the cooperating locking elements including a ramped surface and a lip on one or both of the cap and the neck." '381 Patent, Col. 3, lines 6-22; Col. 4, lines 7-16 and 55-56 (Claims 2 and 17).



FIG.2

89.     The '372 Publication discloses and teaches a "perimeter of the socket cover 20 is partitioned to include ribs 28 and notches 30 for facilitating mounting thereof to the socket base 14. Particularly, snap latches 32 from the perimeter of the socket base 14 are used to latch onto the corresponding notches 30 of the socket cover 20 to insure positive assembly thereof and prevent wire strain." '372 Publication at ¶ [0034]; Figs. 2 & 6.



90.     Equally circumferentially-spaced necks and caps were known to those skilled in the art.

91.     The prior art discloses equally circumferentially-spaced necks and caps for light strings.

92.     The '372 Publication discloses equally circumferentially-spaced necks and caps for light strings.

93.     The person of ordinary skill in the art could substitute the equally circumferentially-spaced arrangement of cut-outs and latches in the '372 Publication for the cut-outs and connecting members of the '381 Patent to yield predictable results.

94.     The '372 Publication provides reasons for having equally circumferentially-spaced cut-outs and latches, which includes enhancing the positive assembly of the neck and cap preventing wire strain.

95. The '461 Patent discloses solving the problem of inefficient assembly of light string products.

96. The '372 Publication and the '461 Patent each try to solve problems associated with light string assembly.

97. The '962 Patent is another prior art device which used four cut-outs equally circumferentially-spaced from one another for its light string design:



98.     As shown above in Paragraphs 50-83, a battery was a known prior art substitute for the transformer disclosed in the '381 Patent and that substitution was available to the person of ordinary skill in the art to substitute for the transformer in the '381 Patent and yield predictable results.

99.     As shown above in Paragraphs 28-98, the '381 Patent includes every limitation of Claim 8 of the '461 Patent and to the extent a limitation is absent, the '381 Patent discloses a substitute for that limitation that is available in the prior art to the person of ordinary skill in the art to substitute for what is disclosed in the '381 Patent to yield predictable results.

## PRAYER FOR RELIEF

WHEREFORE, VTC prays for judgment as follows:

A.     A declaration that VTC has not infringed, or has actively induced or contributed to infringement by anyone else, of any claims of the '461 patent, either literally or under the doctrine of equivalents;

B.     A declaration that to the extent that any of the claims of the '461 patent is infringed, such claims are invalid;

C.     A declaration that all claims of the '461 Patent are invalid;

D.     A declaration that VTC is not liable in any way under 35 U.S.C. § 271;

E.     A declaration that IPH is not entitled to any of the relief sought in the Complaint, and shall take nothing;

F.     Judgment against IPH and in favor of VTC, dismissing the Complaint with prejudice and sustaining VTC's Counterclaims;

G.     An order preliminarily and permanently enjoining IPH, its officers, directors, servants, managers, employees, agents, successors and assignees, and all persons actively in concert or participation with any of them, from directly or indirectly asserting that VTC or its customers infringe, or have infringed, any claim of the '461 patent;

H.     A declaration that this is an exceptional case under 35 U.S.C. § 285;

I.     An award to VTC of its costs, expenses and reasonable attorney fees incurred in this action pursuant to 35 U.S.C. § 285; and

J.     An award to VTC of such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant-Counterclaimant VTC hereby demands a trial by jury of all issues properly triable to a jury in this case.

Dated:  May 3, 2019                          Respectfully submitted,

                                                    /s/ Craig C. Reilly
                                                    Craig C. Reilly (VSB # 20942)
                                                    111 Oronoco Street
                                                    Alexandria, Virginia 22314
                                                    T: (703) 549-5354
                                                    F: (703) 549-5355
                                                    E: craig.reilly@ccreillylaw.com
                                                    *Counsel for Defendant Virginia Toy*
                                                    *        and Novelty Company*

*Of Counsel for Defendant:*

Joseph A. Farco (*pro hac vice*)
LOCKE LORD LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 100281-2101
T: (212) 415-8600
F: (646) 808-3182
E: jfarco@lockelord.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of May 2019, a true and complete copy of the foregoing was filed through the Court's CM/ECF system, which has served a copy on all counsel of record.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant Virginia Toy
and Novelty Company*